# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WINCO FOODS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. CIV-18-175-HE |
| | ) |
| CROSSLAND CONSTRUCTION | ) |
| COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This case arises out of the construction of a new WinCo Foods grocery store in Oklahoma City, Oklahoma. The parties have filed cross motions for partial summary judgment on the issue of liquidated damages.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. To determine whether this standard is met, the court views the evidence in the light most favorable to the non-moving party. See Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## Background

The background facts are substantially undisputed. On March 31, 2017, WinCo Foods, LLC ("WinCo"), as owner, and Crossland Construction Company, Inc. ("Crossland"), as general contractor, entered into an agreement for the construction of WinCo Store #149 (the "Project") in Oklahoma City. Crossland was required to begin work on the Project on April 3, 2017 and to achieve substantial completion 224 days later. The contract documents contained the following liquidated damages provision:

> Further notwithstanding anything to the contrary in the Contract Documents, the Owner and the Contractor recognize that in the event the Contractor fails to achieve Substantial Completion of the Project by the Projected Completion Date (plus any proper extension granted pursuant to a Change Order issued under paragraph 8.3.1), the Owner will incur substantial damages and the extent of such damages shall be incapable of accurate measurement. Nonetheless, the Owner and the Contractor acknowledge that on the date of this Contract, the amount of this Contract, the amount of liquidated damages set forth below represents a good faith estimate as to the actual potential damages that the Owner will incur as a result of late Substantial Completion of the Project. Such liquidated damages shall be the sole and exclusive remedy of the Owner for late completion of the Project, and the Owner hereby expressly waives all other remedies available at law or in equity with respect to losses resulting from late completion. The amount of the liquidated damages calculated hereunder does not include any penalty. This liquidated damages Clause covers delay damages only and the Owner reserves the right to recover from the Contractor all other damages the Owner may incur as a result of any breach of this Contract, including but not limited to direct damages, consequential damages, attorneys' fees and costs. The Owner and the Contractor agree that the Contractor shall pay the Owner, as liquidated damages

2

> for delay, the following amount for each day that expires after the Projected Completion Date (plus any proper extension granted pursuant to a Change Order issued under paragraph 8.3.1) until such time as all requirements for Substantial Completion have been satisfied by the Contractor: **$5,000 per day**.

WinCo Store No. 149 Supplementary Conditions, § 8.3.3.

Unforeseen site conditions were discovered almost immediately after work began on the Project and delayed the progress of Crossland's work. Weather events and Crossland's issues with one of its subcontractors also impacted the construction schedule. Additionally, portions of Crossland's concrete work at the storm refuge area of the Project was rejected and had to be fixed. No extensions of time were granted to Crossland, and the Project was not substantially completed by the projected completion date. WinCo asserts the Project was substantially completed on April 5, 2018; Crossland asserts the Project was substantially completed much earlier. WinCo Store #149 opened for business on April 18, 2018.

WinCo asserts Crossland owes it $715,000 in liquidated damages. Crossland contends (1) the liquidated damages provision is void and unenforceable; (2) WinCo did not make a timely claim for liquidated damages; (3) the Project was substantially completed no later than January 8, 2018; and (4) Crossland was entitled to additional time based upon events beyond its control.

## Analysis

I.  Whether the liquidated damages provision is valid and enforceable

Under Oklahoma law, a contractual, non-penal liquidated damages provision is valid and enforceable when it would be impracticable or extremely difficult to fix the amount of actual damages. *See* 15 Okla. Stat. § 215(A). Oklahoma courts have set forth the following three criteria by which a valid liquidated damages clause may be distinguished from a penalty: (1) the injury caused by the breach is difficult or impossible to estimate accurately; (2) the parties intended to provide for damages rather than for a penalty; and (3) the sum stipulated is a reasonable pre-breach estimate of the probable loss. *See* Sun Ridge Inv'rs, Ltd. v. Parker, 956 P.2d 876, 878 (Okla. 1998). "Whether the damages were difficult of ascertainment is to be determined as of the time the contract was entered into and not at the time of the breach." Waggoner v. Johnston, 408 P.2d 761, 769 (Okla. 1965). The burden of establishing that damages would be difficult to ascertain and that the liquidated damages provision does not impose a penalty rests on the party seeking to enforce the liquidated damages provision. *See id.* at 768.

The court concludes the undisputed facts establish the enforceability of the liquidated damages provision — that damages would be difficult to ascertain and that the liquidated damages provision did not impose a penalty. Courts have consistently held that delay damages in construction contracts are inherently difficult to accurately predict. *See, e.g.,* Carr-Gottstein Props., Ltd. P'ship v. Benedict, 72 P.3d 308, 311 (Alaska 2003) ("it is generally accepted that injuries caused by construction delays are nearly always difficult to determine."). In this case, the extent of damages caused by a delay in the completion of

4

the construction of the WinCo grocery store was made more difficult to accurately predict in light of the undisputed facts that WinCo was new to the Oklahoma City grocery store market and that the particular location had never before housed a grocery store.[1] Further, the parties agreed in the contract documents that the extent of the damages incurred due to a delay "shall be incapable of accurate measurement."

Additionally, the parties agreed that on the date of the contract, "the amount of liquidated damages . . . represents a good faith estimate as to the actual potential damages that [WinCo] will incur as a result of late Substantial Completion of the Project." These parties were experienced and sophisticated commercial entities, and no basis appears for discounting their negotiated agreement. Further, the fact that WinCo may use the same amount for daily liquidated damages in all of its contracts does not, in and of itself, undercut the reasonableness of the estimate of probable losses caused by the delay. *See* Bowbells Pub. Sch. Dist. No. 14, Bowbells v. Walker, 231 N.W.2d 173, 177 (N.D. 1975); DJ Mfg. Corp. v. U.S., 86 F.3d 1130 (Fed. Cir. 1996). Further, WinCo's evidence, not challenged by Crossland, is that WinCo's average loss per store per day is $12,000. Fixing the amount of liquidated damages at less than half of the average loss is certainly reasonable.

Finally, the language of the provision indicates the parties intended to provide for damages rather than for a penalty, specifically stating that the amount of liquidated damages does not include any penalty. WinCo's belief that the liquidated damages clause would have the effect of encouraging prompt performance by Crossland does not turn the

---

[1] *Crossland does not dispute that WinCo was new to the Oklahoma City grocery store market and the location had never before housed a grocery store.*

provision into a penalty. *See* Robinson v. United States, 261 U.S. 486, 488 (1923) ("In construction contracts a provision giving liquidated damages for each day's delay is an appropriate means of inducing due performance, or of giving compensation, in case of failure to perform."). Further, the fact that $5,000 is likely less than the damages WinCo incurred as a result of the delay shows that the amount is not a penalty; less than half the projected damages is not an exorbitant amount indicating that WinCo sought to penalize Crossland for any delay.

The court concludes the undisputed facts show the contract provision relating to liquidated damages to be enforceable.

## II. Whether WinCo was required to comply with the notice of claims provision when making its claim for liquidated damages

Crossland contends that WinCo was required to comply with the contract documents' notice of claims provision and that it failed to provide timely notice of its claim for liquidated damages. The notice of claims provision is a separate provision from the liquidated damages provision and is located in a separate section of the contract documents. As set forth above, the terms of the liquidated damages provision govern the issue of liquidated damages "notwithstanding anything to the contrary in the Contract Documents". Thus, any additional requirements set forth in the notice of claims provision, that are not included in the liquidated damages provision, would not apply. Because the liquidated damages provision does not require WinCo to provide notice of any claim for liquidated damages and makes the entitlement to liquidated damages automatic where the circumstances warrant, WinCo was not required to comply with that notice procedure.

### III. Whether Crossland is entitled to additional time

Crossland asserts it was owed time extensions for delays caused by events, conditions, and circumstances beyond its control, thereby extending the projected completion date and lessening the amount of liquidated damages owed. WinCo contends that Crossland was required under the contract documents to submit a claim for additional time within twenty-one days of the occurrence that is the basis of the request for additional time and that Crossland did not fulfill that requirement. WinCo therefore contends Crossland is not entitled to any extensions of time for completion.

"[C]ompliance with a contractual provision for an extension of time for completion of the contract is a condition precedent to relieving the contractor from the contractual liability for liquidated damages for delay in completion." Flour Mills of Am., Inc. v. Am. Steel Bldg. Co., Inc., 449 P.2d 861, 874 (Okla. 1969). *See also* Quin Blair Enters., Inc. v. Julien Constr. Co., 597 P.2d 945, 951-52 (Wyo. 1979) (holding that failure to request in writing extension of time to complete contract is fatal to contention that he should be allowed additional time to complete contract due to delay); State Surety Co. v. Lamb Constr. Co., 625 P.2d 184, 191-92 (Wyo. 1981) (same).

Section 8.3 of the contract documents provides, in pertinent part:

> § 8.3.1 If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time

7

shall be extended by Change Order for such reasonable time as the Architect may determine.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Article 15.

AIA Document A201-2007, §§ 8.3.1, 8.3.2. Article 15 provides, in pertinent part:

§ 15.1.2 **NOTICE OF CLAIMS**
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

§ 15.1.5 **CLAIMS FOR ADDITIONAL TIME**

§ 15.1.5.1 If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

§ 15.1.5.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

AIA Document A201-2007, §§ 15.1.2, 15.1.5.1, 15.1.5.2.

As set forth above, the contract documents require written notice of claims for additional time to be initiated within 21 days after the occurrence of the event giving rise to such a request and, if adverse weather conditions are the basis for the additional time, to include certain documentation under § 15.1.2. Further, § 8.3.1 of the contract documents

8

makes an extension of the contract time by change order mandatory when specific events cause delay in the commencement or progress of the work. Crossland has submitted evidence that it requested time-related change orders on several occasions but the requests were never approved or rejected by WinCo. *See* Affidavit of Kadin Mendicki at ¶2; July 18, 2017 email from David Van Etten to Rich Charrier; November 29, 2017 email from Zach Compton to Mark Daniels. WinCo has submitted evidence disputing that Crossland ever made a claim for additional time, pursuant to the contract documents. *See* Declaration of Mark A. Daniels at ¶ 5. Based upon this evidence, the court concludes there is a disputed issue of material fact as to whether Crossland submitted a timely claim for additional time, thereby precluding summary judgment on this issue.[2]

IV. When did substantial completion of the Project occur

Under the liquidated damages provision, liquidated damages are incurred "until such time as all requirements for Substantial Completion have been satisfied" by Crossland. WinCo and Crossland disagree as to when all requirements for substantial completion were satisfied. WinCo asserts that substantial completion occurred on the date certified by the architect, Mark Daniels; Crossland asserts that substantial completion occurred months earlier when a temporary certificate of occupancy could have been obtained.

---

[2] *The contract documents are unclear as to whether a request for a change order regarding a time extension and a claim relating to time are the same thing. It is also unclear whether the occurrence referenced in the notice of claims section is the event that is the basis for the time extension request or the date the request for a change order is denied.*

The contract documents define "Substantial Completion" as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." AIA Document A201-2007, § 9.8.1. The "date of Substantial Completion" is defined as "the date certified by the Architect in accordance with Section 9.8." AIA Document A201-2007, § 8.1.3. Crossland has submitted evidence showing that the architect did not follow all of the procedures set forth in Section 9.8, thereby creating a justiciable question as to whether the date certified by the architect should be considered the "date of Substantial Completion." Further, the court concludes there are disputed issues of fact as to when the work was sufficiently complete that WinCo could occupy or utilize the grocery store for its intended use.

Additionally, Crossland asserts the architect's certification is not conclusive or binding due to fraud, gross mistake and/or lack of knowledge. In a construction contract that provides that the determination of an identified architect concerning certain matters shall be binding upon the parties,

> [t]he law writes into such a contractual provision a requirement that the architect . . . must, at all times, and in respect to every matter submitted to his determination under such a provision, exercise an honest judgment and commit no such mistake as, under all the circumstances, would imply bad faith, and that his certificate must be made upon such knowledge of the subject matter as to warrant an opinion binding upon the parties to the contract. To make a certificate without a proper knowledge of the facts, which upon investigation is found to be untrue, is equivalent in law to the making of a certificate known to be false, for the result is the same – one is the product of open fraud, and the other is the product of such bad faith as to operate as a fraud in law.

10

Antrim Lumber Co. v. Bowline, 460 P.2d 914, 920 (Okla. 1969). Crossland has submitted evidence that the architect never inspected the Project to determine the date of substantial completion. Crossland has also submitted evidence, which, when taken in the light most favorable to Crossland, shows the architect was biased towards WinCo and did not exercise an honest judgment.[3] Because there are disputed issues of material fact as to the architect's conduct, the architect's certification cannot be considered conclusive for purposes of summary judgment.[4]

## Conclusion

The court concludes the contract provision for liquidated damages is enforceable and that WinCo was not required to comply with a formal claims procedure to set up a claim for liquidated damages. Apart from those conclusions, neither party is entitled to summary judgment on the amount of liquidated damages. Subject to the court's resolution of the referenced issues, the parties' motions for partial summary judgment (Doc. Nos. 87, 88, and 91) are **DENIED**.[5]

---

[3] *Crossland has submitted evidence that the architect asked WinCo what date to insert in his draft substantial completion certificate and consulted with WinCo prior to sending emails and making other determinations.*

[4] *In light of this conclusion, it is unnecessary to resolve now the issue as to whether Mr. Daniels or Callaway Architecture, LLC was authorized to work on the Project due to alleged non-compliance with Oklahoma's State Architectural and Registered Interior Designers Act or whether Crossland waived this argument based upon its actions during the construction of the Project.*

[5] *Crossland filed a motion to strike certain exhibits that were attached to WinCo's motion for partial summary judgment and response to Crossland's motion for partial summary judgment. The challenged exhibits do not alter the court's ruling. Crossland's motion to strike (Doc. #94) is therefore moot.*

**IT IS SO ORDERED.**

Dated this 21st day of November, 2019.

                                          JOE HEATON
                                          UNITED STATES DISTRICT JUDGE